Jerry Ray BOLDEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 63240.

Court of Criminal Appeals of Texas,
Panel No. 1.

June 23, 1982.

Randy Taylor, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Stanley Keeton, Gerri Holden Meier and Greg Davis, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, TOM G. DAVIS and W. C. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated robbery. After the jury found appellant guilty it found that he had been convicted of two prior felonies. Punishment was assessed at life.

Mustasa Makkiah, a clerk at a Stop & Go store on Garland Road, and two other witnesses identified appellant as the person who robbed Makkiah at gunpoint while he was on duty at the store around 10:15 p.m. on August 19, 1978.

In his first ground of error appellant complains that the trial court erred in failing to grant his motion for new trial based on newly discovered evidence.

At the hearing on appellant's motion for new trial, David Stevens, an old acquaintance, testified in appellant's behalf. Stevens related that he saw appellant at the intersection of Northwest Highway and Community Drive at 10:14 p.m. on the night of the alleged robbery. Stevens stated that appellant was driving a 1970 or 1971 Grand Prix and that appellant did not see him. Stevens testified that the location where he spotted appellant is at least a thirty minute drive from the Stop & Go store on Garland Road. At the time of appellant's trial, Stevens stated, he was unaware appellant was accused of committing a robbery on the night in question. He responded to an advertisement in the Dallas Morning News asking anyone who saw appellant on the evening of August 19, 1978, to contact a certain number.

In rebuttal, the State called Cheryl Scott who repeated her trial testimony that she saw appellant at the Stop & Go store on North Buckner at approximately 10:10 p.m. on August 19. The store on Buckner, she testified, is about a ten minute drive from the store on Garland.

Larry Jack Conner of the Dallas Police Department testified that he went to the Stop & Go store on North Buckner between 10:10 and 10:15 p.m. on August 19. He was responding to a report of a suspicious person made by the store clerk, Cheryl Scott. He left the store looking for a white-over-brown Grand Prix with the 1978 license plates JAT 454.

A motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial judge, and his decision thereon, absent a showing of clear abuse of discretion, should not be disturbed on appeal. *Williams v. State*, Tex. Cr.App., 504 S.W.2d 477.

To show that the court abused its discretion the record must indicate: (1) that the evidence was unknown to the movant

before trial; (2) that his failure to discover it was not due to his want of diligence; (3) that it is probably true and its materiality is such as will probably bring about a different result on another trial; and (4) that it is competent, not merely cumulative, corroborative, collateral, or impeaching. *Eddlemon v. State*, Tex.Cr.App., 591 S.W.2d 847; *Hernandez v. State*, Tex.Cr.App., 507 S.W.2d 209.

■ Even a prima facie case requiring a new trial is overturned when the trial court determines that the new testimony is not probably true or a different result will not probably be reached if the new testimony is produced upon another trial. *Williams v. State*, supra.

■ In the instant case, Stevens' testimony was rebutted by Scott and Conner at the hearing on the motion for new trial. The trial court was free to believe Scott and Conner and to disbelieve Stevens. Further, even if Stevens' testimony had gone unrefuted, three eyewitnesses identified appellant at trial as the robber, and evidence discovered in appellant's apartment implicated him in the crime.

Appellant relies heavily on *Carlisle v. State*, Tex.Cr.App., 549 S.W.2d 698, in which new evidence was discovered by coincidence and a new trial was ordered. In *Carlisle*, however, all of the evidence against the accused was circumstantial, and the State did not rebut the testimony offered at the new trial hearing. Carlisle responded to the State's evidence impeaching his witness' credibility with competent rebuttal testimony. Here, the evidence against appellant was not just circumstantial, the State rebutted Stevens' testimony, and appellant did not rebut the testimony of Scott or Conner. Appellant's first ground of error is overruled.

■ In his second ground of error, appellant complains that the trial court erred in denying his motion to discover the verdicts rendered in former trials by members of the jury panel. Since this information was allegedly possessed by the State, appellant contends that his inability to obtain the same deprived him of a fair and impartial trial. Appellant was not allowed to ask members of the panel what their verdicts had been in previous trials. He requested a postponement for two days in order to search court records. The trial court offered two hours.

An almost identical fact situation was presented in *Redd v. State*, Tex.Cr.App., 578 S.W.2d 129. There we held that the action complained of did not constitute an abuse of discretion. Appellant's second ground of error is overruled.

In his third ground of error appellant complains that the trial court erred in admitting into evidence, over objection, items seized in the search of appellant's apartment, "without a warrant pursuant to arrest without probable cause."

On the evening of August 19, 1978, Officer Richard Alford of the Dallas Police Department was on patrol. At approximately 10:20 p.m. he heard over his police radio the description of the suspicious person who had been seen at the Stop & Go on North Buckner. Officer Conner's radio report noted that the person was seen driving a white-over-brown Pontiac with license plate number JAT 454. Ten minutes later Alford was driving past the Stop & Go located on Garland. Joe and Victoria McIntyre flagged him down. The McIntyres had just witnessed the robbery of Mustasa Makkieh. Victoria gave a description of the robber that, to Alford, vaguely resembled that of the suspicious person. Joe said the robber drove east on Garland in a white-over-dark auto.

At 11:30 Alford received the registration on the suspicious person's vehicle. The car was registered in Balch Springs, which works off of a different police radio channel than the one Alford was using. Alford switched to Channel 3 and put out the description on the vehicle. An officer reported that he had worked on a theft earlier in the evening where the suspect took a .45 caliber revolver from an in-law. The in-law accused Jerry Ray Bolden (appellant) of taking the gun. Bolden was driving a white-over-brown Pontiac with license plate

number JAT 454. Bolden was now living at 9711 Military Parkway.

Alford and Reserve Officer Cookston proceeded to 9711 Military Parkway where they were met by Officers McDonald and Arnold. Appellant's Grand Prix was spotted.

The four officers approached appellant's door with their guns drawn. They did not think they had probable cause to arrest appellant, but considered him a potentially dangerous suspect. Arnold knocked and received no response. Arnold knocked and identified the officers. He received no response. Again Arnold knocked and identified the officers and received no immediate response. Finally, appellant opened the door and pointed a gun at Arnold's face. Arnold dropped down and fired into the apartment. The officers fired several shots into the apartment. A bystander told the officers that a woman and child might be in the apartment, so they ceased firing.

Appellant was coaxed out of the apartment and arrested after about fifteen minutes. The officers went into the apartment to see if they had inadvertently injured a woman or child. Inside, the officers found appellant's gun in plain view in an open dresser drawer. A gun holster and wadded-up money were partially uncovered and in plain view in a clothes basket. Appellant complains of the introduction into evidence of these items, which connected him to the robbery.

■ Appellant's arrest was clearly authorized under Art. 14.01(a), V.A.C.C.P. Appellant, by pointing his gun at Arnold, committed aggravated assault in the presence of the officers. The officers had a right to be at appellant's residence to question him about the earlier robbery.

Since appellant was arrested outside of his apartment the search of the apartment absent a warrant must fit into one of the exceptions to the Fourth Amendment's warrant requirement.

Appellant notes that the entry in question took twenty-five minutes. There is no suggestion, however, that the evidence was seized as the result of a twenty-five minute search. Rather, Officers Alford and Arnold stated that they entered the apartment and found the evidence in plain view.

In *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the United States Supreme Court said:

"... Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. Cf. *Michigan v. Tyler*, [436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486] 436 U.S., at 509–510, 98 S.Ct. at 1950–1951. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' *Wayne v. United States*, 115 U.S.App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Michigan v. Tyler*, supra, 436 U.S., at 509–510, 98 S.Ct. at 1950–1951; *Coolidge v. New Hampshire*, 403 U.S. [443], at 465–466, 91 S.Ct. [2022] at 2037–2038 [29 L.Ed.2d 564].

"But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.' *Terry v. Ohio*, 392 U.S. [1], at 25–56, 88 S.Ct. [1868], at 1882 [20 L.Ed.2d 889], and it simply cannot be contended that this search was justified by any emergency threatening life or limb. All the persons in Mincey's apartment had been located before the investigating homicide officers arrived there and began their search. And a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search." (Footnotes omitted).

■ The officers in the instant case were justified in entering the apartment to determine if a woman and child had been injured by the gunfire. In the course of their legitimate emergency activities they were justified in seizing any evidence in plain view. No error is shown.

In his fourth ground of error, appellant complains of ineffective assistance of counsel at the punishment stage of the trial, due to the failure to object to the admission of allegedly uncounseled prior convictions.

Exhibits 20 through 28 purported to be prior convictions of appellant. Exhibits 27 and 28 were the convictions used for enhancement purposes. According to appellant, "a close examination of these exhibits reveals strong probabilities that in some of these cases appellant did not have counsel." Exhibits 27 and 28 (certified copies of the judgments and sentences in two prior convictions) show only form recitations that counsel was present. Appellant contends that trial counsel should have examined and objected to these exhibits and appellant should have testified as to whether he had a lawyer, was indigent, or waived counsel during these earlier trials.

■ Ineffective assistance of counsel cannot be established by separating out one portion of the trial counsel's performance for examination. "[T]he sufficiency of an attorney's assistance must be gauged by the totality of the representation of the accused . . . Isolated failures to object to certain procedural mistakes or improper evidence do not constitute a breach of legal duty by an accused's attorney." *Ewing v. State*, Tex.Cr.App., 549 S.W.2d 392, 395.

■ In this regard, we note that appellant's trial counsel participated in the voir dire of the jury, filed several pretrial motions, requested and obtained a hearing out of the jury's presence to challenge identification testimony of certain witnesses, cross-examined the State's witnesses, made several objections, some of which were sustained, objected to the court's charge, requested certain jury charges, requested an instructed verdict, and presented final argument at the guilt-innocence stage of the trial on behalf of appellant.

Moreover, we question whether failure to object to the exhibits is any evidence of ineffective assistance. We have consistently held that when there is a recitation in the judgment and sentence that an accused was represented by counsel, "appellant's testimony that he was not represented by an attorney, standing alone, is insufficient to disprove the recitations in the judgment." E.g., *Glover v. State*, Tex.Cr.App., 566 S.W.2d 636, 638. Appellant's fourth ground of error is overruled.

The judgment is affirmed.

ROBERTS, J., dissents.