William Alfred **CHANSLOR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–82–00626–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 15, 1984.

Rehearing Denied May 10, 1984.

Robert C. Bennett, Houston, for appellant.

Karen Zellers, Asst. Dist. Atty., Houston, for appellee.

Before JACK SMITH, BULLOCK and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

The jury found the appellant guilty of solicitation to commit murder, and assessed his punishment at three years confinement and a $5,000 fine. In two grounds of error, he alleges that the trial court failed to include in the charge an instruction on "aiding suicide", and the trial court erred in overruling his motion for a new trial without a hearing.

The appellant, an attorney and businessman in Houston, married Sue Sanders Chanslor in 1964. In 1979, Mrs. Chanslor suffered a cerebral aneurism or stroke and was hospitalized. Although Mrs. Chanslor received considerable rehabilitation, she eventually became wheelchair-bound. This resulted in Mrs. Chanslor becoming despondent, and although the couple moved from Houston to McAllen, Texas, this condition continued. The appellant testified that Mrs. Chanslor's despondent condition caused her to want to take her life.

In 1981, the appellant advertised in several military magazines, under the name of John G. Thompson, to locate experts in poisons and chemical agents who would give lectures to civic groups. In one of these magazines, the appellant saw an advertisement by John Anthony Minnery for the sale of a series of books entitled "How to Kill." In October of that year, he contacted Mr. Minnery by letter and then by telephone. In March, 1982, the appellant contacted Mr. Minnery in Branford, Canada, where Mr. Minnery lived, to obtain a non-detectable and painless poison. Arrangements were made whereby the appellant was to meet Mr. Minnery at the Toronto Airport for the purchase of the poison. Mr. Minnery contacted the police in Canada, and on April 8, when the appellant was to meet Minnery in Toronto, the police placed a recorder on Minnery and used an undercover policeman, Keith Symons, to pose as Minnery's cousin to meet the appellant. The appellant informed these two men that the poison was for an invalid female, and gave Mr. Symons expense money to deliver the poison in Houston. The Houston police and the Texas Department of Public Safety had been notified that John G. Thompson would then be returning to Houston, and thereafter through an investigation they identified "Mr. Thompson" as the appellant.

On April 21, 1982, Symons met with the appellant in the Houston airport to deliver the poison to him and received $2,500. The appellant was arrested at that time.

When trial commenced, the parties stipulated that certain items would be admitted into evidence. These items included a statement by the appellant that while he was in Canada he met Minnery and Symons and paid for the poison to give to his wife. Also stipulated was Mrs. Chanslor's answers to questions by the police in which she said that she did not have the nerve to take her own life.

■ In his first ground of error, the appellant urges that the trial court erred by refusing to instruct the jury on his requested defensive theory of "aiding suicide". He argues that his testimony that he bought the poison in order to make it available for his wife to commit suicide raises a defensive theory of "aiding suicide" as a defense.

Renunciation is the only specific affirmative defense to criminal solicitation provided in the Texas Penal Code. See, Secs. 15.04(b), (c) and (d) (Vernon 1974). General defenses to criminal conduct are supplied in the Code in Secs. 8.01–8.07 and also in Secs. 9.01–9.44 (Vernon, 1974). These defenses included insanity, mistake of fact, mistake of law, intoxication, duress, entrapment,

and others. No mention is made of aiding suicide *as a defensive theory* in these latter sections of the code. Furthermore, the appellant's assumption in his argument that aiding suicide is a lesser included offense of solicitation is a false premise. Art. 37.-09, Tex.Code Crim.Proc.Ann. states as follows:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

The failure to meet the requirement of Art. 37.09(2), that "The offense differs from the offense charged only in the respect that a less serious injury or risk of injury to the same *person, property,* or *public interest* to establish its commission", precludes the conclusion that the offense of "Aiding Suicide" is a lesser included offense of the offense of "Solicitation To Commit Murder." Death can be the end result of either offense. Although it could be argued that "Solicitation To Commit Murder" is a felony and "Aiding Suicide" may, in some instances, be only a Class C misdemeanor, the classification of the offense or the range of punishment is not the criteria set forth in Art. 37.09(2). The criteria are "that a less serious injury or risk of injury" be involved. It could also be argued that death by suicide is a less serious injury than death by murder, when considered from a public interest viewpoint, but we do not agree with this concept.

Thus, we conclude that since the objectives in the offenses of "Solicitation to Commit Murder" and "Aiding Suicide" are

death, a less serious injury or risk of injury is not involved.

Further, we note that the concept of the two offenses is completely different. In "Solicitation To Commit Murder" the theory of the offense is to punish a person if he *solicits* the services of a third person: (1) To assist in the commission of murder, (2) To have the third party commit the murder, or (3) To have a third party arrange to commit the murder. The primary basis of the offense is the *solicitation.* The commission of the offense occurs when the *solicitation* has been made. However, in the offense of "aiding suicide" the theory is to punish a person if he *aides* another person in committing suicide. The two offenses are separate and distinct and the facts required to establish the commission of the offense of "Solicitation To Commit Murder" are singularly distinct from those required in the offense of "Aiding Suicide". Under the facts of the instant case, the State could have sought an indictment for both offenses, but it chose not to do so.

We hold that the offense of "Aiding Suicide" is not a lesser included offense of the offense of "Solicitation To Commit Murder", and the trial court did not err in refusing to give the appellant a defensive instruction on aiding suicide. The appellant's ground of error number one is overruled.

In his ground of error number two, the appellant alleges that the trial court erred in overruling his motion for a new trial without a hearing. He states that his motion for new trial was filed on January 10, 1983, and that the basis for the motion was newly discovered evidence of perjury by a key State witness, Mr. Symons. He further states that during the course of the trial Mr. Symons swore to the fact that the appellant said, "I can't take it any longer, the bitch is getting to me." He also states that after the trial had terminated, he obtained an authentic copy of the tape made during his conversation with Symons and submitted it to an expert who examined the tape. Attached to the appellant's motion

for new trial was an affidavit signed by the expert who stated that in his opinion the questionable portion of the tape reflects the voice of William Chanslor saying:

The simpler way would just be for me to give it. The person will take anything I give her.

The appellant asserts that although he had filed a motion for discovery to produce the tape recording, and the State had agreed to produce the tape, the State did not make available either the original or an audible copy of the tape until the day of trial. He also asserts that this was his first opportunity to listen to the tape, but that a portion of it was inaudible and no representative of the State could at that time say what the defendant said on the inaudible portion of the tape recording. He alleges that it was several days later, in mid-trial, when the witness Symons gave the perjured testimony, "I can't take it any longer; the bitch is getting to me." He avers that he was caught without remedy or ability to refute such testimony except by his own denial.

The appellant does not deny that his motion for new trial was untimely filed, but he asserts that the refusal of the trial court to give him a hearing on his motion for new trial denied him an opportunity to discover the extent of the prosecuting attorney's knowledge concerning the use of perjury to convict him. Thus, he states that he has been denied his constitutional right to due process of law, if he has been convicted in a trial containing testimony known by the prosecution to be perjured. He avers that if evidence upon which a conviction is based is false, even though not solicited by the prosecution, it irreparably taints the conviction if it is knowingly allowed to go uncorrected after the conviction.

The State contends that the appellant's motion for new trial was untimely filed, and could not be considered after seventy-five days had elapsed following the date sentence was imposed. *See,* Tex.Code Crim.Proc.Ann. art. 40.05 (Vernon Supp. 1982–1983). The State also urges that the trial court did not abuse its discretion in denying the motion for new trial because the evidence was available to the appellant at time of trial, and the appellant did not use due diligence in his attempt to discover the contents of the tape.

 Ordinarily an untimely motion for a new trial should not be heard by a trial court. Tex.Code Crim.Proc.Ann. art. 40–05 (Vernon Supp.1982–1983). However, in a case where an accused's constitutional rights are in conflict with a valid procedural rule of law, the procedural rule must yield to the superior constitutional right. *Whitmore v. State,* 570 S.W.2d 889 (Tex. Cr.App.1976) (Opinion on Appellant's Motion for Rehearing). However, when a constitutional right is asserted in a motion for a new trial, after sentencing, good cause must be shown to permit the untimely filing of the motion. *Morales v. State,* 587 S.W.2d 418 (Tex.Cr.App.1979). The Texas Court of Criminal Appeals in *Bolden v. State,* 634 S.W.2d 710 (Tex.Cr.App.1982), set forth the following criteria to be considered when a motion for new trial alleges newly discovered evidence:

(1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial;

(2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence;

(3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will probably bring about a different result on another trial.

[5] In the instant case, the appellant's motion for new trial failed to meet the standards of the first three criteria set forth in *Bolden.* First, the evidence was available to the movant at the time of trial. Secondly, the movant's failure to discover or obtain the evidence was due to a lack of diligence on the part of the appellant. In this connection, the appellant was aware that the State had recorded tapes in its possession prior to June 9, 1982, because on that date he filed and was granted a motion for discovery of the tapes and other

items. The tapes complained about were delivered on July 27, 1982, the day the trial commenced. There is nothing in the record to indicate that the appellant had attempted to compel delivery of the tape between June 9 and July 27. Further, the record does not reflect that on July 27, the appellant filed a motion for continuance because the State had not previously delivered the tape in accordance with the trial court's order of June 9. In mid-trial, when the witness gave to what the appellant now claims is perjured testimony, the appellant did not claim surprise nor make a motion for a continuance. The appellant was sentenced on August 4, and seventy-five days from that date, October 19, any motion for a new trial would have been overruled by operation of law. Tex.Code Crim.Proc. Ann. art. 40.05(c) (Vernon Supp.1982–1983). The appellant's motion for new trial was not filed until January 10, 1983, and the only evidence in the record which would indicate any effort by the appellant to ascertain the content of the tape is the State's motion to duplicate a tape, which was filed on October 25, 1982. Under these facts, we are unable to conclude that the appellant used due diligence to discover the content of the complained of tape.

As to the third criteria set forth in *Bolden, supra,* in determining whether to grant a new trial when the cause involves newly discovered evidence, we are of the opinion that the alleged new evidence is not new evidence but is merely corroborative of the appellant's version of what he said in his conversation with the witness Keith Symons. Therefore, we conclude that the expert's opinion of what was contained on the tape would have been merely corroborative of the appellant's testimony and would not constitute new evidence.

Although the appellant has correctly identified the constitutional issue, he has failed to show "good cause" for his untimely filing of his motion for a new trial. The trial court did not err in its actions. The appellant's ground of error number three is

overruled and the judgment of the trial court is affirmed.

Publish. Tex.Crim.App. 207.

COHEN, Justice, dissenting.

The appellant contends that the trial court erred in failing to submit a charge on aiding suicide, Penal Code sec. 22.08, as a lesser included offense. Whether aiding suicide can be an included offense of solicitation of murder appears to be a question of first impression.

The appellant testified that he obtained the poison only to help his wife take her own life and that he obtained an undetectable poison to protect his son from the stigma of having a suicide in the family. Mrs. Chanslor testified, on behalf of the appellant, that she asked him to help her commit suicide, and that, prior to his arrest, they had frequently discussed her depressed condition and her wish to take her own life. Finally, Mrs. Chanslor testified that if her husband had provided her with a pill which would kill her, she would have taken it.

The appellant contends that he was guilty only of aiding suicide, a class C misdemeanor, rather than solicitation of murder, a second degree felony. The offense of aiding suicide is defined in Penal Code sec. 22.08 as follows:

(a) A person commits an offense if, with intent to promote or assist the commission of suicide by another, he aids or attempts to aid the other to commit or attempt to commit suicide.

The offense of solicitation of murder is defined in Penal Code sec. 15.03 as follows:

(a) A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.

The appellant argues that his and Mrs. Chanslor's testimony indicates he was guilty only of aiding suicide, because it

shows that he purchased the poison for her to use to take, or attempt to take, her own life.

Criminal attempt occurs when a person acts "... with specific intent to commit an offense, [and] he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Penal Code sec. 15.01(a). The purchase of the poison for the purpose claimed by the appellant falls within this definition.

The appellant's admission that, by purchasing the poison, he attempted to aid Mrs. Chanslor to attempt suicide establishes the elements of aiding suicide. Only the appellant's intent was disputed in this case. The indictment alleged that he, with intent to commit murder, requested Minnery to help him cause Mrs. Chanslor's death by providing a poison for her to ingest. The appellant admitted requesting Minnery to aid him by providing a poison, which he intended to give to Mrs. Chanslor for her to ingest and thereby cause her own death. The appellant denied any intent to commit murder, but admitted his intent to aid Mrs. Chanslor's suicide.

A charge on a lesser included offense is required when the evidence raises an issue that the defendant, if guilty, is guilty only of the lesser included offense. *Sanford v. State,* 634 S.W.2d 850, 852 (Tex.Cr.App. 1982); *Royster v. State,* 622 S.W.2d 442, 446 (on rehearing) (Tex.Cr.App.1981). *See also McBrayer v. State,* 504 S.W.2d 445 (Tex.Cr.App.1974), and *Daywood v. State,* 157 Tex.Cr.R. 266, 248 S.W.2d 479, 481 (1952). "It is well settled that if facts adduced at trial raise an issue and a charge on such issue is properly requested, then a charge on the issue must be given.... It is further well settled that a defendant's testimony alone is sufficient to raise an issue." *Day v. State,* 532 S.W.2d 302, 306 (Tex.Cr.App.1975).

Whether an offense is a lesser included offense is determined by Art. 37.09 of the Texas Code of Criminal Procedure, which provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) *it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same* person, property, or *public interest suffices to establish its commission;* (emphasis supplied)

(3) it differs from the offense charged only in the respect that a less culpable mental states suffices to establish its commission;

or;

(4) it consists of an attempt to commit the offense charged or otherwise included offense.

It is presumed that the Legislature intended for the entire statute to be effective, and the Code Construction Act requires us to consider every part of art. 37.09 in construing its meaning. Tex.Rev. Civ.Stat.Ann. art. 5429 b–2, sec. 3.01 (Vernon 1982); *Barbee v. State,* 432 S.W.2d 78, 82–83 (Tex.Cr.App.1968) (on rehearing).

Whether an offense is a lesser included offense of the offense charged is determined on a case by case basis, according to the particular facts involved. *Ex parte McClelland,* 588 S.W.2d 957 (Tex.Cr.App. 1979); *Day v. State, supra.*

The majority opinion refers to the second definition of art. 37.09, *supra,* and argues that the injury or risk of injury from the two offenses is the same because death may result from either solicitation of murder, the offense charged, or aiding suicide, the asserted lesser included offense. That does not decide the issue before us, however. It shows only that the two offenses pose the same risk of injury to the *same person,* Mrs. Chanslor. The question remains: does aiding suicide differ from solicitation of murder only in the respect that its commission constitutes a less serious injury to the *same public interest?* See art. 37.09(2), *supra.*

I would hold that it does. The preservation of life is the public interest protected

by statutes condemning both solicitation of murder, a felony, and aiding suicide, a misdemeanor. The Legislature, by making Penal Code sec. 22.08a class C misdemeanor, has clearly expressed the public policy of Texas that aiding suicide is a less serious threat to the preservation of life than is solicitation of murder. The Legislature has apparently determined that the public interest in preserving life is less threatened by death at one's own hand than it is by death at the hand of another. The injury to the public interest from criminal homicide is generally determined by the manner in which life is taken, not the result to the victim, which is, by definition, the same in every case. The defendant's intent determines the degree of injury to the public interest, as shown by the fact that a defendant convicted of criminal homicide may receive penalties ranging from death for capital murder to misdemeanor probation for negligent homicide. See Penal Code, Chapter 19.

Under the facts of this particular case, aiding suicide should be considered a lesser included offense of solicitation of murder, pursuant to Code of Criminal Procedure art. 37.09(2), *supra.*

Therefore, I respectfully dissent.