ACCEPTED
13-14-00422-cr
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/27/2015 10:17:04 AM
DORIAN RAMIREZ
CLERK

## NO.  13-14-00422-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF
TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/27/2015 10:17:04 AM
DORIAN E. RAMIREZ
Clerk

## DYLAN A. TRISTANI,
### Appellant,

### v.

## THE STATE OF TEXAS,
### Appellee.

On Appeal from the
County Court at Law #1
Of Victoria County, Texas
Cause No. 2-100216

## BRIEF FOR THE STATE OF TEXAS

### STEPHEN B. TYLER
Criminal District Attorney
Victoria County, Texas

### BRENDAN WYATT GUY
Assistant Criminal District Attorney
Victoria County, Texas
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
bguy@vctx.org
(361) 575-0468
(361) 570-1041 (fax)
State Bar No. 24034895

Attorneys for the State of Texas

## ORAL ARGUMENT NOT REQUESTED

# TABLE OF CONTENTS

**PAGE (S)**

TABLE OF CONTENTS ..................................................................... ii

INDEX OF AUTHORITIES .......................................................... iii-iv

STATEMENT OF THE FACTS ........................................................ 1-5

SUMMARY OF ARGUMENT ........................................................... 5-8

ARGUMENT ..................................................................................... 8-24

   I.  The trial court did not err in admitting the
      video evidence ...................................................................... 8-17

   II. The trial court did not erroneously prohibit
       a proper voir dire question ............................................... 17-20

   III. In the alternative even if there was error from
        the denial of Appellant's voir dire question
        about prior jury service that error was harmless
        and can therefore be disregard ......................................... 20-24

PRAYER ............................................................................................. 24

SIGNATURE ...................................................................................... 24

CERTIFICATE OF COMPLIANCE ................................................ 25

CERTIFICATE OF SERVICE ......................................................... 26

# INDEX OF AUTHORITIES

## United States Supreme Court Cases

*Dalton v. Texas,* 130 S. Ct. 555 (2009) ..................................................... **9**

*Davis v. U.S.,* 114 S. Ct. 2350 (1994) ..................................................... **8-12**

## Texas Cases

*Blackman v. State,* 414 S.W. 3d 757 (Tex. Crim. App. 2013) .............. **18**

*Bolden v. State,* 634 S.W.2d 710 (Tex. Crim. App. 1982) .................... **18**

*Briggs v. State,* 789 S.W. 2d 918 (Tex. Crim. App. 1990) .................... **13**

*Broxton v. State,* 909 S.W. 2d 912 (Tex. Crim. App. 1995).................. **13**

*Buchanan v. State,* 207 S.W. 3d 772 (Tex. Crim. App. 2006).............. **13**

*Comeaux v. State,* 445 S.W. 3d 745 (Tex. Crim. App. 2014) ............... **23**

*Dalton v. State,* 248 S.W. 3d 866, 869
(Tex. App.-Austin 2008, pet. ref'd),
*cert. denied* 130 S. Ct. 555 (2009) ........................................................ **9-12**

*Dinkins v. State,* 894 S.W. 2d 330 (Tex. Crim. App. 1995)......... **8-10, 12**

*Dixon v. State,* 2 S.W. 3d 263 (Tex. Crim. App. 1998)......................... **16**

*Easley v. State,* 424 S.W. 3d 535 (Tex. Crim. App. 2014) .................... **21**

*Hardie v. State,* 807 S.W. 2d 319 (Tex. Crim. App. 1991)...................... **8**

*In re H.V.,* 252 S.W. 3d 319 (Tex. 2008)................................................. **11**

*Martinez v. State,* No. 07-11-00473-CR, 2012 WL 5342546
(Tex. App.-Amarillo 2012, pet. ref'd)
(mem. op. not designed for publication) ................................................ 11

*Mbuga v. State,* 312 S.W. 3d 657
(Tex. App.-Houston [1ˢᵗ Dist.] 2009, pet. ref'd) ..................................... 11

*Redd v. State*, 578 S.W.2d 129(Tex. Crim. App. 1979) .......................... 18

*Sells v. State,* 121 S.W. 3d 748 (Tex. Crim. App. 2003) ........................ 17

*Siverand v. State,* 89 S.W. 3d 216
(Tex. App.-Corpus Christi 2002, no pet) ................................................ 23

*State v. Herndon,* 215 S.W. 3d 901 (Tex. Crim. App. 2007) ................. 20

## Texas Rules

TEX. R. APP. 9.4 ...................................................................................... 25

TEX. R. APP. 33.1 ............................................................................. 13, 16

TEX. R. APP. 44.2 ................................................................................... 22

**NO. 13-14-00422-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEEN DISTRICT OF TEXAS
AT CORPUS CHRISTI

DYLAN A. TRISTANI……..…………………………………..Appelant

v.

THE STATE OF TEXAS,…..…………………………………...Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS**,** by and through her Criminal

District Attorney, Stephen B. Tyler, and as Appellee in the above numbered

and entitled cause, and files this the Appellee's brief showing:

**STATEMENT OF THE FACTS**

Appellant's case was called for trial on March 11, 2014. [RR-II-1].

Prior to the start of voir dire, Appellant indicated he would be going to the

Court for punishment should he be found guilty. [RR-II-6].

During Appellant's voir dire, he asked Venire Person #24 if they had

served on a jury before, if they were the foreman, was the case a felony or

misdemeanor, did the jury reach a verdict, and did the court or the jury do

the punishment. [RR-II-69]. After these questions were answered, the trial court requested the attorneys approach the bench. *Id.* The trial court then cautioned the Appellant not to ask the question concerning whether the judge or the jury accessed punishment since that question would indicate what the verdict was in the prior case. [RR-II-70]. Appellant objected to not being permitted to ask that question. *Id.* The trial court overruled the objection and informed the Appellant he could ask the questions: 1) have you been on the jury; 2) were you the foreman; and 3) was a verdict reached. *Id.* Appellant did not propose any alternate questions. *Id.*

Appellant then proceeded to question the remaining venire members who had prior jury service along the questions permitted by the court. [RR-II-69-74]. Six additional members of the venire panel, Venire Person Maresh, Venire Person #9, Venire Person #12, Ms. Delilah Perez, Venire Person Kaen, and Venire Person #22 all indicated prior jury service. *Id.* Venire Person Maresh and Venire Person #9 stated that their juries did not reach a verdict. [RR-II-71-72].

After the completion of voir dire questioning, Appellant requested additional peremptory challenges for each of the venire persons who indicated prior jury service. [RR-II-80]. Appellant contended that without being permitted to question those venire persons further about their prior

jury service, it would force him to assume that all of those jurors convicted defendants and thus use up his peremptories on them rather than on other venire persons. [RR-II-81]. Appellant then requested seven additional peremptory challenges. *Id.* The trial court denied this request. [RR-II-82]. Appellant then requested to be granted additional peremptory challenges only for the venire members who indicated prior jury service where they reached a verdict on the case, and noted that one of the Venire members actually had answered Appellant's question about if the jury had reached a verdict, and thus lowered his request to four additional peremptory challenges. *Id.* The trial court also denied this request. *Id.* Appellant did not request challenges for cause for any of the jurors who indicated prior jury service on the grounds of their prior jury service. [RR-II-83-113].

Appellant sought a challenge for cause for Venire Person #10 on the grounds that they were biased in favor of police officers. [RR-II-103]. The trial court denied this request. *Id.* Appellant had Venire Person #13 questioned for possible bias but did not request a challenge for cause against her. [RR-II-104-106]. Appellant did not seek any sort of challenge for cause against Venire Person #18. [RR-II-83-113].

After challenges for cause were made, Appellant indicated there were still three venire members with prior jury service within the strike zone and

indicated he would have struck Venire Person #10, Venire Person #13, and Venire Person #18 if the court had granted him the additional peremptories he had requested. [RR-II-114]. Appellant then repeated his request for additional peremptories. *Id.* The trial court again denied this request. *Id.* Appellant asserted he used all his peremptory challenges on members with prior criminal jury service that were within the strike range but did not specifically identify those people. [RR-II-114].

The State's first witness was Sergeant Jeff Strauss of the Victoria Police Department. [RR-II-127]. Sergeant Strauss testified to being called out on July 22, 2012 to investigate a suspect who was passed out in his vehicle in the drive through lane of McDonalds. [RR-II-128-129]. Sergeant Strauss then identified the Appellant as being the driver of that vehicle. [RR-II-129]. Sergeant Strauss was then used to sponsor the video taken from his patrol car from that night, State's Exhibit 1. [RR-II-131-132].

The trial court then conducted a bench conference to allow Appellant concerning the admissibility of this evidence. [RR-II-132-158]. Appellant objected to State's Exhibit 1 on the grounds that it contained an invocation from the Appellant of his right to counsel. [RR-II-132]. Appellant also noted a portion of the video showing Sergeant Strauss discussing with another officer that Sergeant Strauss believed that the Appellant had invoked

his rights. [RR-II-151]. Appellant did not specify whether he was actually objecting to this later segment or was just using it as evidence to support him re-urging his previous objection concerning the earlier portions of the video where Sergeant Strauss had asked Appellant if he wanted an attorney. [RR-II-151-152]. The trial court overruled Appellant's objection. *Id.* At no point during this conference or at any other time during the trial did Appellant object to any portion of the video on the grounds that it made an inference that Appellant had invoked his right to counsel. [RR-II].

State's Exhibit 1 shows that the Appellant asked "can I get a lawyer?" in a tone that was questioning. [State's Exhibit 1 at 26:06]. Appellant then stated, "I guess I'd like a lawyer." [State's Exhibit 1 at 28:57]. The officer then asking a clarifying question about whether Appellant wanted a lawyer to which Appellant answered, "I guess so." [State's Exhibit 1 at 29:03].

Redacted versions of the video were eventually entered into evidence as State's Exhibit 6 and 7. [RR-III-106, 109; State's Exhibits 6-7].

Appellant was found guilty of the charged offense. [RR-IV-115].

## SUMMARY OF THE ARGUMENT

The trial court did not commit any error in admitting the objected to portions of the videos because Appellant did not definitively invoke his right to counsel. Rather Appellant's statements were all ambiguous, suggesting at

most that he might want a lawyer, and that is not enough to constitute an effective invocation of the right to counsel. Nor does the investigating officer's subjective belief on whether Appellant invoked or not matter because the standard for determining whether an effective invocation occurred is an objective standard, and by that standard Appellant did not actually invoke his right to counsel.

Nor may Appellant now argue that even if the invocation was ambiguous the video segment still should have been suppressed because it implied he had invoked his right to counsel. Appellant did not make that specific argument at trial and thus has procedurally defaulted on that claim and is not permitted to make it for the first time on appeal.

Likewise Appellant cannot now object to the portions of the video where Sergeant Strauss discussed with other officers whether Appellant had invoked or not because Appellant failed to make a specific objection at trial and indeed appears to have not actually made any objection concerning that portion of the video. Furthermore, even if Appellant is deemed to have made a specific objection there it would just be the same objection he made earlier concerning his claim that he invoked his right to counsel, and thus that objection too would fail due to it being an ineffective invocation of the

right to counsel based on it being ambiguous as to whether Appellant was invoking.

The trial court also did not commit any error by prohibiting Appellant from questioning venire members about who accessed punishment during their prior instances of jury service. Such a question is effectively asking what the verdict of those previous trials was, and trial courts have the discretion to disallow questions on that topic. Additionally, there is nothing in the record to support Appellant's claim that the trial court refused to allow this questioning for an improper reason, but even if the trial court's ruling had been based on an improper basis, the ruling would still have to be upheld so long as it can be justified by a valid legal basis. Here there were clear, valid legal bases for not allowing such a question and therefore the trial court's ruling must stand.

Nor can Appellate show he suffered any harm from not being allowed to ask such a question. Appellant's sole justification in his brief for the disputed question is that being denied the chance to ask this question denied him the chance to learn about the venire member's prior experience accessing punishment. Such a ground was immaterial to this case since the jury was not going to be accessing punishment. Likewise Appellant also did

not suffer any erroneous denial of a challenge for cause.    Therefore even if there was error in denying the question, the error was harmless.

## **ARGUMENT**

### **I.  The trial court did not err in admitting the video evidence.**

The audio portion of a video should be suppressed to the extent that it shows a suspect invoking his constitutional rights.  *Hardie v. State,* 807 S.W. 2d 319,322 (Tex. Crim. App. 1991).  However, this protection only exists if a defendant actually invokes his right to counsel.  *Davis v. U.S.,*114 S. Ct. 2350, 2355 (1994); *Dinkins v. State,* 894 S.W. 2d 330, 351 (Tex. Crim. App. 1995).  If the suspect makes a reference to an attorney that is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel" then there is no invocation of the right to counsel and the officer does not have to cease questioning.  *Davis,* 114 S. Ct. at 2355; *Dinkins,* 894 S.W. 2d at 351-352.    Rather the suspect must unambiguously request counsel.  *Davis,* 114 S. Ct. at 2355.  The inquiry into whether a subject has actually invoked his right to counsel is purely an objective one.  *Davis,* 114 S. Ct. at 2355; *Dinkins,* 894 S.W. 2d at 351.

In the present case there was no unambiguous invocation of the right to counsel.  Rather Appellant gave a tentative response when asked if

he wanted an attorney, stating only that "I guess I'd like a lawyer" [State's Exhibit 7 at 10:02] and "Yeah, I guess so" when again asked if he wanted a lawyer. [State's Exhibit 7 at 10:08]. These are not the definite, unambiguous invocations of the right to counsel that are required for officer's to have to cease questioning.

The United States Supreme Court has already found that a defendant saying, "maybe I should talk to a lawyer" is not a clear invocation of the right to counsel. *Davis,* 114 S. Ct. at 2357. Likewise the Texas Court of Criminal Appeals determined that a defendant saying, "maybe I should talk to someone" is also not a clear invocation of the right to counsel. *Dinkins,* 894 S.W. 2d at 352. Moreover, the Austin Court of Appeals found a defendant telling an investigating officer, "I guess I should get a lawyer before I really get into what happened" and when further questioned about whether he wanted a lawyer, responding with: "I should get one, probably. I guess so. I mean, I guess, I should do it. I suppose I should get a lawyer. Oh yeah, I want one", did not constitute a clear invocation of the right to counsel. *Dalton v. State,* 248 S.W. 3d 866, 869, 873 (Tex. App.-Austin 2008, pet. ref'd), *cert. denied* 130 S. Ct. 555 (2009). The parallels between *Dalton* and the present case are obvious. Both involve suspects stating that they <u>guess</u> they want a lawyer. Guessing was deemed too equivocal in

*Dalton* to constitute an effective invocation of the right to counsel; it should likewise be deemed too equivocal in this case to constitute an effective invocation.

A suspect must express a *definite* desire to speak to an attorney to constitute an actual invocation of the right to counsel. See *Dinkins,* 894 S.W. 2d at 352 (emphasis added). A statement that involves the word "guess" is far from definite. A person who asked their significant other, "will you be faithful to me when I am away", would hardly feel confident with an answer of, "I guess so." Likewise an attorney, questioning a voir dire panel on if they would follow Texas law on some key component of the case would be acting in a professionally negligent manner if they did not attempt to clarify a venire person who answered such a question with, "I guess I could." Any statement with the word "guess" in it is at best a tentative statement. Such a statement in the context of whether or not a person wants a lawyer at best suggests that the suspect <u>might</u> want a lawyer, but it clearly does not definitively establish that they do want a lawyer, and as already discussed, putting an officer on notice that you might want a lawyer is insufficient to constitute an actual invocation of the right to counsel. See *Davis,* 114 S. Ct. at 2355; *Dinkins,* 894 S.W. 2d at 351-352. The invocation must be definite. It simply was not here.

Likewise the question, "Can I get a lawyer?" is also not a clear invocation of the right to counsel. Numerous Texas courts have considered similar statements and found them to not be clear invocations of the right to counsel. See *In re H.V.,* 252 S.W. 3d 319, 325 (Tex. 2008)(establishing that the question, "I can't afford a lawyer but is there any way I can get one?" was not an invocation of the right to counsel); *Mbuga v. State,* 312 S.W. 3d 657, 665 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd)(holding the statement "Can I wait until my lawyer gets here" was not a clear and unambiguous invocation of the right to counsel); *Martinez v. State,* No. 07-11-00473-CR, 2012 WL 5342546 at 4 (Tex. App.-Amarillo 2012, pet. ref'd)(mem. op. not designed for publication)(holding the statement, "Can I get a lawyer in here?" was not a clear, unambiguous request for an attorney.) At no point did Appellant ever make a clear, unambiguous invocation of his right to counsel, and therefore he was not entitled to the constitutional protections of an actual invocation.

Nor does it matter whether Sergeant Strauss believed the suspect was invoking his right to an attorney or not. The test for whether a suspect has invoked his right to counsel is not a subjective standard based on what the investigating officer believed. It is an objective standard based on what a reasonable officer in those circumstances would have believed. See *Davis,*

114 S. Ct. at 2355; *Dinkins,* 894 S.W. 2d at 351. Indeed the *Dalton* case, which continues to closely mirror the facts of the present case, actually involved one of the investigating officers, an Officer Basulto, reporting to the other officers that the defendant had invoked his rights. See *Dalton,* 248 S.W. 3d at 873. The Austin Court of Appeals found that immaterial as the mere fact that Officer Basulto himself believed that the Appellant had invoked his rights, did not "convert the statement at issue into the type of unequivocal statement required." *Dalton,* 248 S.W. 3d at 873. In the present case, the statements made to Sergeant Strauss were objectively ambiguous on whether or not Appellant wanted an attorney. Therefore it does not matter what Sergeant Strauss actually believed concerning those statements. The statements made to him did not constitute an objective, actual invocation of the right to counsel, and since there was no unambiguous invocation of the right to counsel, there was no error in the admission of the video evidence.

Nor is there any basis for Appellant's new argument that even in the face of an ambiguous assertion, it is still error for the trial court to have admitted the objected to portions of video since those segments might create the impression that Appellant had invoked his right to counsel.

Appellant did not make this argument at trial, and thus Appellant is

now foreclosed from arguing this specific point on appeal. A trial objection generally must be specific in order to preserve a complaint for review on appeal. See TEX. R. APP. P. 33.1(a)(1)(A); *Buchanan v. State,* 207 S.W. 3d 772, 775 (Tex. Crim. App. 2006). A general or imprecise objection may be sufficient to preserve error but only if the legal basis for the error is obvious to the court and the opposing counsel; when the legal basis of the objection is not obvious, failure to make a specific objection at trial forfeits that issue for appeal. *Buchanan,* 207 S.W. 3d at 775.

The rationale for this rule is obvious. A trial court cannot intelligently rule on objections if it does not know what those objections are. Thus it is the responsibility of the parties to state with specificity what they find objectionable about offered evidence. Furthermore, an objection stating one legal theory cannot be used to support a different legal theory on appeal. See *Broxton v. State,* 909 S.W. 2d 912, 918 (Tex. Crim. App. 1995). And even constitutional errors may be waived by failure to properly object at trial. See *Briggs v. State,* 789 S.W. 2d 918, 924 (Tex. Crim. App. 1990).

Appellant made numerous objections concerning the admission of portions of the video evidence in this case. [RR-II-132-135, 139, 144-145, 151, III-103]. However, not once in all those many challenges to the admissibility of the video evidence did Appellant ever object to the material

on the grounds that, even if Appellant's statements were not a clear invocation of the right to counsel and instead constituted an ambiguous invocation, those statements still should not be admitted into evidence because they would create an inference that Appellant had invoked his right to counsel. [RR-II-132-135, 139, 144-145, 151, III-103]. Rather, Appellant's attorney objected solely on the grounds that his client actually had invoked his right to counsel. *Id.* Appellant's attorney was insistent that the Appellant made "a very firm invocation" that was "not at all ambiguous, not at all unclear" [RR-II-135], and argued that the invocation was "complete and clear." [RR-II-150]. Furthermore, when asked to summarize his objection to the objected to portion of the video Appellant characterized it as, "My objection, the same objection, that this man invoked his right to counsel". [RR-II-151]. Appellant stayed remarkably consistent on that single basis for his objection to this evidence and never proposed any alternate theory on why the portions of the video relating to whether Appellant wanted an attorney should be barred.

Appellant is now attempting to argue a different legal theory for why the objected to portions of the video evidence were inadmissible then what he argued at trial. This is improper. Perhaps if Appellant had raised this alternate theory at trial, the trial court would have ruled differently and kept

the objected to portions of the video out, but the Appellant did not do so. The Appellant did not give the trial court the opportunity to rule upon this alternate basis for challenging the objected to evidence and therefore should no more be allowed to raise this new theory on appeal then he would be allowed to raise an objection that the material was unfairly prejudicial or irrelevant for the first time on appeal. Appellant procedurally defaulted on this particular theory by failing to make a specific objection at trial on these grounds and therefore is barred from raising this theory for the first time on appeal.

A similar issue exists as to Appellant's complaint about the portion of the video where Sergeant Strauss informs another officer that he believes the Appellant invoked his right to counsel. It is unclear if Appellant even actually objected to this segment of the video. Appellant stated his intention to object to the video, [RR-II-151-152], but when asked to clarify the nature of his objection, stated that he was re-urging his earlier objection [RR-II-152]. That would seem to mean that the Appellant was not making an independent objection to this specific portion of the video but rather was simply reurging his previous objection about the earlier portions of the video and was using this portion simply to support his argument that the earlier portions of the video he objected to constituted an actual invocation of the

right to counsel. If that is correct then Appellant made no actual objection to this segment of the video, and therefore failed to make the kind of timely objection required to preserve error under Texas Rule of Appellate Procedure 33.1(a)(1). See also *Dixon v. State,* 2 S.W. 3d 263, 265 (Tex. Crim. App. 1998)(holding that objections must be timely.) Thus he now would be barred from objecting to the admissibility of this portion of the video since he did not object to it at trial.

But even if Appellant is deemed to have actually objected to the portion of the video concerning Sergeant Strauss's conversation with the other officer, Appellant's objection to that portion of the video was still defective due to a lack of specificity. Appellant never explained why he found this portion of the video objectionable. [RR-II-152]. Therefore even if Appellant is deemed to have made an objection to that portion of the video, the objection failed to preserve any claim for appellate review on this point due to lack of the required specificity.

Now it is possible that this Honorable Court will conclude that even though Appellant did not articulate a specific objection to this portion of the video, it can be inferred that he is making the same objection to this portion of the video that he made to the earlier portions. Such a determination would save Appellant from having procedurally defaulted on his objection to

this portion of the video, but it still would not establish a basis for relief. If Appellant's only valid, properly preserved objection to this portion of the video is the same objection he made earlier (insisting that he did invoke his right to counsel), then this objection fails for the same reason (the invocation was objectively ambiguous and thus did not constitute an actual invocation of the right to counsel.)

Therefore since Appellant did not unambiguously invoke his right to counsel and did not preserve at trial any other appellate issues that relate to the admission of the video evidence, Appellant has no basis to challenge the admission of the video evidence. Accordingly, his first ground of error should be denied.

## II. The trial court did not erroneously prohibit a proper voir dire question.

Nor did the trial court commit any error in prohibiting Appellant from asking members of the venire panel about whether it had been the judge or the jury that accessed punishment in the prior cases where they served on a jury. [RR-II-68-69]. A trial court has broad discretion over jury selection, including the right to impose reasonable limits on the voir dire examination. *Sells v. State,* 121 S.W. 3d 748, 755 (Tex. Crim. App. 2003). This discretion includes the authority to prohibit questions concerning the specifics of their

verdicts in previous trials.  See *Bolden v. State,* 634 S.W.2d 710, 712 (Tex. Crim. App. 1982); *Redd v. State*, 578 S.W.2d 129, 130-31 (Tex. Crim. App. 1979).

A question concerning whether the judge or jury accessed punishment in a venire person's previous jury experience serves no purpose other than to attempt to determine what the verdict was of that case.  Indeed Appellant at trial essentially conceded in response to the trial judge's question that his entire purpose in asking that question was because the answer would imply what the verdicts were from the venire person's prior jury service.  [RR-II-71].  Therefore Appellant's question was exactly the kind of question about the specifics of prior jury service that the trial court has the discretion to disallow.

Appellant's reliance on the *Blackman* case is likewise misplaced. *Blackman* does not stand for the proposition that trial courts are required to allow questioning about the specifics of prior jury service.  It merely states that a trial court can allow such questioning if it chose to do so.  It puts no obligation on the trial court to do so and in fact specifically reasserts that a trial court can exercise its discretion to disallow those kind of questions. *Blackman v. State,* 414 S.W. 3d 757, 761 n.7 (Tex. Crim. App. 2013).

In the present case it was therefore obviously well within the trial

court's discretion to disallow Appellant's proposed question. Appellant's question was not one that would plausibly lead to any sort of challenge for cause. It was likewise of little value in letting a party intelligently exercise its peremptory challenges since knowing the verdict of a previous case tells you nothing of use if you do not also know the specific facts and circumstances of that case. (It would take considerable follow up questioning about those specific facts and circumstances to actually devise anything of value from knowing the specifics of a juror's prior jury verdict.) Furthermore, Appellant clearly had no need to know if the venire members had prior experience in accessing punishment, since the jury would not be accessing punishment in the present case. (Appellant had prior to the start of voir dire elected to go to the judge for punishment rather than the jury.) [RR-II-6]. As such Appellant's question was both irrelevant and an unnecessary waste of court time and therefore the trial court acted well within its discretion to place reasonable limits on voir dire by not permitting the Appellant to ask a pointless question.

Appellant also now contends the trial court made its ruling on an incorrect belief in the law. This contention is not supported by the record as the record is silent as to why the trial court did not allow these questions to be asked. (The record shows only that the trial court informed the Appellant

he could not ask the question [RR-II-69-70] and did not specify why it found the question objectionable, other than noting that the question was seeking answers which implied what the verdict was in the prior trials. [RR-II-71].) Since the record is silent as to the reason for why the trial court felt the question was improper, there is no basis for concluding the trial court disallowed the question for an erroneous reason.

At any rate there is no need for us to speculate on what the trial court's reasoning was because even if the trial court had ruled Appellant's question improper on an incorrect basis, that ruling would still have to be upheld so long as it was correct on some other applicable legal theory. See *State v. Herndon,* 215 S.W. 3d 901, 905 n.4 (Tex. Crim. App. 2007). Here Appellant's question could fairly be disallowed both in the interest of setting reasonable time limits and, given that the Appellant was not going to the jury for punishment anyway, for simply being irrelevant to any issue of importance in the trial. Therefore, even if the trial court's ruling was for the wrong reason, the ruling is still valid on other valid legal grounds and as such the trial court's ruling must be upheld.

## III. In the alternative even if there was error from the denial of Appellant's voir dire question about prior jury service that error was harmless and can therefore be disregard.

In the alternative, even if the trial court did commit error in refusing to

permit Appellant to question venire members about the specifics of their prior jury service, that error was harmless beyond a reasonable doubt and can therefore be disregarded.

As a threshold matter, Appellant is clearly not entitled to have this issue considered under a constitutional error analysis. Being denied one question hardly rises to the level of being a limitation on voir dire "so substantial" as to rise to the level of constitutional error. See *Easley v. State,* 424 S.W. 3d 535, 541 (Tex. Crim. App. 2014). Appellant was permitted a substantial voir dire which included extensive questioning of every venire member who indicated prior jury service. [RR-II-47-80]. Therefore there was no substantial limitation on Appellant's voir dire and as such there is no legal justification to apply a constitutional error analysis to this issue.

But even if a constitutional error framework was employed, Appellant still has no basis for relief on this claim. Appellant's sole argument in his brief for why he was harmed by not being allowed to pursue this line of inquiry in voir dire is that it "wholly prevented" Appellant from "ascertaining whether the panel members had prior experience assessing punishment." [Appellant's Brief at 24]. What Appellant fails to explain though is why there was any need to ascertain whether the panel members had prior experience assessing punishment.

Appellant had already elected, prior to the start of voir dire, to go to the judge for punishment rather than the jury. [RR-II-6]. Therefore, since the venire members were not going to be called upon to assess punishment in this case, their prior experience assessing punishment was wholly irrelevant. Appellant cannot possibly have suffered any harm from not being able to question venire members about a task that those members were not going to be called upon to perform, and therefore it is clear beyond a reasonable doubt that Appellant did not suffer any harm from not being permitted to question the venire members on this point. Maybe in a trial where Appellant was going to the jury for punishment his question would have had some genuine merit, but in a trial where punishment was to be assessed by the judge, the venire member's prior experience accessing punishment simply did not matter.

As such Appellant is not entitled to relief even under the generous constitutional error framework much less under the much less strict non-constitutional error framework of Texas Rule of Appellate Procedure 44.2(b). It is clear beyond a reasonable doubt that Appellant did not suffer any harm from not being allowed to ask one rather meaningless question, and Appellant certainly did not have any substantial rights affected by not being permitted to ask that question as it is simply not plausible that the

verdict of a trial would be different based on Appellant being able to ask the venire panel a question about a function (assessing punishment) that the jury was not even going to perform.

Nor is Appellant's contention that he suffered harm from not being able to use peremptory challenges on Venire members 10 and 13 persuasive. The case Appellant cites in support of this claim relates to a defendant being harmed by the loss of a peremptory strike due to the erroneous denial of a challenge for cause. See *Comeaux v. State,* 445 S.W. 3d 745, 749-751 (Tex. Crim. App. 2014). That did not happen in this case. Appellant did not even request a challenge for cause on Venire member 13. [RR-II-104-106]. And while Appellant did attempt to challenge for cause Venire member 10 at trial [RR-II-103], Appellant has not re-litigated that issue in his appeal and thus has implicitly conceded that the trial court was correct in denying his challenge for cause. See *Siverand v. State,* 89 S.W. 3d 216, 220 (Tex. App.-Corpus Christi 2002, no pet) (standing for the proposition that when a party does not file a brief it is conceding the issue. The same logic would seem to suggest that when a party does not raise an appellate issue, it is effectively conceding the trial court ruling was correct on that point.) As such given that there was no erroneous denial of a challenge for cause in this case, Appellant has no grounds to argue he suffered harm due to Venire members

10 and 13 serving on the jury.

Therefore even if there was error from the denial of Appellant's question the error was harmless by both the constitutional and non-constitutional standards of review, and as such the error can be discarded.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that this Honorable Court affirm the judgment of the trial court.

.

**Respectfully submitted,**

**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139

**ATTORNEYS FOR THE APPELLEE,**
**THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that the number of words in Appellee's Brief submitted on March 27, 2015, excluding those matters listed in Rule 9.4(i)(1) is 5,352.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139

## **CERTIFICATE OF SERVICE**

I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that a copy of the foregoing brief has been served on Norman Silverman, Attorney for the Appellant, by depositing same in the United States Mail, postage prepaid on the day of March 27, 2015.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone:  (361) 575-0468
 Facsimile: (361) 576-4139